May it please the Court, I'm Justin Pearson for the Appellants, and I would like to reserve four minutes if I may. Your Honors, the District Court expressly found that we had plausibly pleaded that the phrase low FODMAP is banned from food labels, yet the District Court still dismissed at the pleading stage both of our listener-based and speaker-based free speech claims. In doing so, the District Court made three separate reversible errors. First, based on Virginia State Board of Pharmacy and the Fifth Circuit's persuasive precedent in Association of American Physicians, this Court should reverse the dismissal of the listener claim for failure to identify a willing speaker. Second, based on this Court's decisions in Rhodes v. Robinson and Ellis O. v. Stroh, this Court should reverse the dismissal of the speaker's FDA claim. Third, based on this Court's decision in McBride, this Court should reverse the dismissal of the speaker's USDA claim for failure to exhaust. I would like to begin with the listener claim, if I may. And the sole basis for that dismissal, Your Honors, was the District Court's finding that we had failed to specifically identify a willing speaker. But that is not a requirement at the pleading stage, and even if it were, our listener plaintiff, Michelle Prisbachi, met it anyway. And so first, Your Honors, as to the first point, the only court to examine the pleading standard for listener claims is the Fifth Circuit in the Association of American Physicians case. And what it explained is that because of the bedrock principle that every reasonable inference must be given to the plaintiffs at the pleading stage, the requirement to specifically identify willing speakers does not arise until the merits stage. And what the Court said there, what the Fifth Circuit said, Your Honor, was that as long as there are sufficient pleadings to give rise to that reasonable inference that those willing speakers are out there, that is sufficient at the pleading stage. And I just want to be clear that just that this, although there was a motion, a 12B1 motion, it was a 12B1 motion on the challenging the failure to plead standing as opposed to raising a factual challenge to standing. Is that correct? Yes, Your Honor. And so, for example, the idea that there are lots of people who need to have this kind of diet so there would be a market for this wasn't challenged. No, Your Honor. And as Your Honor is obviously aware, we explained this at length in the complaint where we expressly alleged that 33 to 50 million Americans suffer from these conditions, that it is mainstream medical advice for doctors to advise these tens of millions of Americans to seek out low FODMAP foods. Let me ask so, part of the issue here, right, is that, am I right that Ms. Przybocki, she has claims against both the FDA and the USDA, is that correct? That is correct, Your Honor. Okay. As to the USDA, is there any real dispute about the existence of a willing speaker given that Gurman Products wants to sell a labeled beef broth but has been told it can't do so? Well, so, we don't think there should be, Your Honor, but just to be honest about this, the district court found that because Ms. Przybocki can find out that information online that that meant that the appellant speakers did not qualify as willing speakers. Okay. But assuming that there's a question, that may be mistaking an informational, the kind of informational injury that would be relevant in a mislabeling case, for example, with the kind of speech injury that you're talking about here. So, assuming that that's a separate issue, but there's, the question of whether there is a willing speaker as to the claims against the USDA, at least there is a party out there who wants to speak to her, correct? Yes, and there are parties to this lawsuit, Your Honor, it's just the district court disqualified. Sorry, so I think I might have a different view of how this is, so I'd like to probe this for a second. So, you started with the willing speakers, there are so many people that there must be a market for this, so if this was allowed, there would be other willing speakers. I find that pretty persuasive, but I do think, am I right that you need that argument for the USDA, for the individual listener plaintiff? Because I don't see how she can say she, at this point, doesn't know about the beef broth. She knows the beef broth is low FODMAP, and so there's really, I understand that in general, for other speakers she wants it to be on the label instead of the website so she can go to the store and see it, but as to the particular speaker who already exists at the beef broth, do you have an argument that she's having an injury about the knowledge of the beef broth? Well, she does know about the beef broth, Your Honor, and what I will point out is that as the Supreme Court pointed out at length in footnote 15 in Virginia State Board of Pharmacy, it's up to the listeners and the speakers to decide the best method. I totally understand that. So for the new willing speakers, the first thing you started with, you're like, it really should be on the label. They shouldn't have to resort to their website. That goes to the Virginia Board footnote. But at this point, is there an argument that your single plaintiff who already is a plaintiff with these people doesn't know about the beef broth, so it matters if it's on the label? No, Your Honor. If this Court were not to follow the Fifth Circuit's precedent and to only restrict the willing speaker allegations to the speaker repellents in this case, then she clearly knows about the beef broth. You're right, Your Honor. However, what I would point out is that there are many, many other willing speakers out there. She doesn't know all about them, and many of them, Your Honors, sell both low FOMAP and non-low FOMAP foods, and so she would not know. But you're right. If this Court were to split from the Fifth Circuit, then I would agree with what Your Honor is saying. So it seems like for the USDA, for the listener theory, you need this additional thing the Fifth Circuit has said, is basically your point, I think. For the listener's claim against USDA, I believe that's correct. I will point out that we have specifically alleged in paragraphs 162 and 163 self-censorship by the speaker repellents. Right, they could have other products, but not the beef broth. Right, that's a fair point. As to them, they might have other products that would be regulated by the USDA, although I actually wondered if you alleged that? You sort of lumped the products. I don't know what products they want to launch, whether they would be regulated by the USDA. Well, to be fair, as we explained earlier in the complaint, Your Honor, all but one of my clients products are governed by FDA. The USDA beef broth is kind of the exception. So I think it's clear from paragraphs 162 and 163, we allege that there would be more FDA-governed products. I think it's fair to say that we don't expressly allege that one of them would also meet that USDA Is it the case that a listener's harm from a restriction on speech is solely tied to the receipt of the information that is being provided, or can the harm or injury result from the restriction on one speaker be denial of receiving the speech at issue, even if there's some way to get the informational content through another? Would we make that analogy in the political context to say, as long as I could read the Times to find out about X person's political critiques of the existing regime, that it's fine to I have no interest in receiving it directly from that person? Your Honor, that's not how the First Amendment analysis works. The listeners get to decide what way is most useful for them. And it should be pointed out that this argument was made by the government, the Virginia State Board of Pharmacy, as well as elsewhere, and expressly rejected by the Supreme Court, where the consumer successfully challenged the ban on price advertising. The government argued that there were other ways to obtain that information, and that many of the consumers already knew aspects of that information. And the Court says, that does not matter. When analyzing listener claims, you have to use the same logic as speaker claims. And then, of course, the Supreme Court gave a list of famous Supreme Court speaker decisions where the speaker could speak in other ways, yet was still able to win because they weren't allowed to speak in their preferred manner. So, as to the FDA claims, do you agree, going to the listener issue, do you, I mean, I think we understand your arguments as to the pleading requirements as to other things. Do you agree that Ms. Przybocki can't rely on any, on Gorman's own speech, or the existing products as a basis for any allegation of harm, because in fact, she is receiving that speech as it stands, because Gorman is already selling those products with the low food map labeling? I agree that it's a much closer call, Your Honor, because I do want to point out that, you know, people don't have perfect memories, and so, like, here, you know, we're only talking about one company, but to the extent, as to that company, she is getting their speech right now. As to that company, she, on the FDA products, correct? Your Honor is correct, that as to the current products not governed by the self-censorship, then, yes, Ms. Przybocki knows that those are low FODMAP products, but as more and more companies, you know, if we were to win this case, start speaking, you know, no normal human being is going to be able to keep all that straight. I'm sorry, so, if you persuade us about the self-censorship of the other willing speakers, like if we agree with the Fifth Circuit, then you would have, I still don't know how to say her name, but the individual plaintiffs claim for standing based on the listening, based on the self-censorship of both your client and other people who would enter the market as to both agencies. If we were to agree with you about that, do we need to reach the standing of the company? Because aren't they all making the same claims? Do you need them all to have standing, or do you really just need one of these plaintiffs to have standing? So, you're right, we only really need one, Your Honor, and if we were up here on appeal from a marriage decision, I would agree that if you ruled in favor of Ms. Przybocki, you wouldn't need to reach the other issues, but because we're up here on a dismissal at the pleading stage, I think we probably do need a ruling on all of the claims. And why, just so, can you explain why? Well, because once we go back down, Your Honor, if we're fortunate enough to do that, you know, we're allowed to plead in the alternative, we're allowed to bring different claims, there's no guarantee that the district court will agree with us on the merits for any one of them, although I do recognize, Your Honor, that the legal arguments are very similar, so I get where Your Honor is coming from. If Your Honor let's see, I understand Your Honor's point. I think it's a fair point. We would ask that the dismissal be reversed on all of the claims, but I do understand what Your Honor is saying. I mean, I guess there's a pragmatic issue, which is like why, I mean, I think legally, these are parties who've had their claims dismissed, so they have a right to a ruling on the propriety of that having appealed, but the question on whether its overall impact on the case may be minimal. I think that why is it the case, you know, if it's okay if I ask about Gourmand, this is an odd case, you know, that most of the authorities that you're relying on to establish the standing to pursue, you know, an enforcement challenge, a challenge to the enforcement of this law, usually they involve either new laws, that there's been a statement that the government intends to enforce them, or, you know, a concrete evidence of an intent to enforce. Here we have the fact that as to the FDA, setting aside the USDA issue, but as to the FDA, they have been successfully marketing these products with a low food map labeling for some period of time. So why doesn't that sort of, why isn't that sufficient to say there's really not a realistic threat of enforcement, just that mere fact that they've been doing this and there's been no enforcement for a period of time? Your Honor, I see I'm into my rebuttal time. Go ahead. As long as we're asking, you should answer. Thank you. Well, I think it's important to recognize, Your Honor, that the FDA has expressly enforced against specific FODMAP sugars for using undefined nutrient content claims. And so both in our opening brief and in our reply, we point to the example of a cease and desist warning letter that was sent over the nutrient content claim, low lactose content. Well, Your Honors, lactose is a sugar, and not only that, it's a FODMAP sugar. It is a disaccharide, which is the D in FODMAP. And so, Your Honor, FDA is enforcing against very similar claims. They just have not yet enforced against FODMAP, and they could tomorrow. There's nothing stopping FDA from arresting my speaker clients tomorrow but for our possible First Amendment defense. Has there been any official disavowal of enforcement against low FODMAP? No, Your Honor. And of course, this touches on the holding from this Court in Ellis over Stroh, where that was a substantial basis of this Court's decision, where there wasn't self-censorship like there is here. But even there, the Court found that because it is a free speech claim, and because the government knew about the issue and did not disavow enforcement, that those were two important factors towards finding that there was standing, even though there had not yet been any self-censorship at all. I understand the arguments about the exhaustion obligation, and particularly as to the theory on why you wouldn't have to exhaust your facial challenges. But couldn't exhausting, you know, going through the process that is required under the statute to challenge the USDA's decision as to the beef broth be relevant even to your facial claim to the extent that the USDA could determine that it doesn't have a problem with the low FODMAP label, in which case there's just no standing to pursue either a facial or an as-applied claim here because there's no harm to your client? No, Your Honor, because the regulations expressly mandate that the people involved in that agency review process have to follow the agency's own interpretation of the regulations. That's sort of what gets into the as-applied issue and the question on whether in fact there's a dispute about whether the outcome of the process is preordained. Let's assume that we conclude there's some possibility that it's not preordained, that we're not certain that the outcome is preordained. So if that's what we conclude, wouldn't exhaustion be useful to the extent that it would make clear whether you in fact have standing to pursue this claim, whether Gorman has standing to pursue its claims? If I may, 7 CFR 11.10b is the one that says that they have to follow the agency's interpretation of their own regulations. That regulation didn't exist, Your Honor. There's some dispute about whether low food map is a nutrient claim. That's the core issue here. Obviously, internally they've said they think it was, but that's the issue. I'm happy to answer hypotheticals, but just so the record is clear, the agency's own interpretation of their own rules as stated in their guidance expressly and unequivocally say that when you characterize the level using terms like low or high of a nutrient, that is a nutrient content claim. Right, but they don't specifically in regulation say a low food map, FODMAP claim is a nutrient claim. That much hasn't been taken into position. I apologize. I obviously don't mean to speak over you, Your Honor. The regulations, and especially the guidance, which is clear and unequivocal, say that all nutrient content claims are banned unless expressly defined in the regulations. So, Your Honor, that unequivocal guidance would have to be followed if my client had pursued an administrative appeal. I'd like to ask this exhaustion question maybe a little differently, or maybe a different exhaustion question. I understand there's cases that say a facial challenge doesn't really need to be exhausted before the agency when the facial challenge is to a statute, and I think the logic of that is why go to an agency that can't change the statute. But do you have a case that says you can't have a facial challenge to the agency about the facial constitutionality of a regulation, where maybe the facial challenge to the regulation would cause the agency to do something different with its regulations, which it does have control over? Well, the direct answer to your question, Your Honor, is no, I don't have that case. But second of all, I do want to point out that in terms of the agency changing their regulations, they'd have to go through notice and comment. They couldn't do that as part of an administrative appeal. The regulations are clear about that. So maybe this exhaustion obligation that USDA has, does it clearly not contemplate that notice and comment and changing regulations is part of what could be a result of an exhaustion effort? I thought my friends did a great job explaining this on pages 32 and 33 of their brief. What they point out, they go through the regulations where they point out that, you know, you officially apply, as, you know, the Speaker Appellants did, but then if you get denied, you appeal through one level of agency review, which the Speaker Appellants did not do. And then if you lose that appeal, there's one more level. Then after that, you can go to court. You go to the D.C. Circuit, usually. And so there's not a requirement to seek out rulemaking. And, Your Honors, I'm reminded of the Supreme Court's last term where the Court explained that because rulemaking is so lengthy and uncertain, it cannot be a requirement to bring a case. So, I mean, your argument is essentially that maybe there's like a First Amendment exception to this exhaustion or something? Like if it's too long, your rights are violated too long in the meantime or something? I'm trying to understand. Perhaps that wasn't clear. So we think that under McBride, we meet all three factors. And there's only two that are in dispute, the collateral question factor and the futility question. And so just taking them in turn. Let's just for a second assume we don't agree with you about collateral. So I'm talking, I think we're mostly talking about futility or some other reason that it shouldn't be, I guess, futility. So for futility, like I pointed out, you know, the unequivocal guidance says that this is a nutrient content claim that is banned by law. The regulations say that that has to be followed. Like that's, in my view, you know, as futile as something can get, Your Honor. Unless somehow the idea that you bring, you say to the agency, I think this is violating my First Amendment rights and I think it doesn't make sense and all these people want to know this information and maybe they say, oh, well, good point. We should write another regulation like we do for gluten or whatever. Well, I mean, Your Honor, I think it does touch on an important point, which is that, you know, every day of delay, because we're talking about the First Amendment here, is causing per se irreparable harm. And so I do think there is some logic in what Your Honor is saying, but I don't know of any support for it. Okay. Sorry. We've taken you over your time. I'll still give you three minutes for rebuttal, but let's hear from the government. Good morning. May it please the Court. Laura Myron for the government. The district court correctly concluded that the complaint here should be dismissed on threshold grounds of standing and exhaustion, effectively because the constitutional question is not ripe for judicial review. The plaintiffs had the opportunity to amend their complaint. They chose not to do so, and this court should affirm based on the allegations in the complaint. I'd like to start with the exhaustion and the company's claims, if I may. I think important to this Court's review is the position that we have made very clear in our brief, and that I am standing as a representative of the agencies today to tell you that there has not been a determination by either agency that the term low FODMAP is an undefined nutrient content claim, and therefore could not go forward on the label. You know, as a — So why did the USDA reject the label? So on page — this is on page 130 of the excerpts of record, and it says specifically that the label application has been returned because they needed to remove all references to digestible, gut-loving, and FODMAP because, quote, FSIS regulations do not provide for structure function claims or medical claims. A similar note was provided on the sort of second return of the label that the products meant to — that imply they are meant to treat a medical disease are considered medical foods and are not under FSIS jurisdiction. So I'm not suggesting that the agency has decided it is not a low FODMAP claim, simply that a final determination has not been made, and that there is significant value in continuing to exhaust the administrative process in order — I'm confused about this, though, because, I mean, basically they are saying we want to stay low FODMAP. Low FODMAP is what they tried to say, and the agency said you can't do this. So maybe the agency, like, wrote the wrong thing. Is that what you're saying? I mean, it's not responsive or something, but, like, they rejected the label. So how does that — Well, look, Your Honor, so it — they haven't concluded the decision-making about whether or not this particular term could — could be allowed or not allowed on the label, and I think the point is that they initially flagged some other parts of the regulations that aren't the regulatory scheme challenged by plaintiffs here. The plaintiffs have an e-mail from a mid-level official at the agency suggesting that it is an undefined nutrient content claim from USDA, and they — they changed their label and went forward with it without exhausting the administrative appeal process. This Court is now being asked to excuse the failure to conclude the administrative process, which would, I think, inform a lot of the questions that you're asking, and, you know, specifically with respect to the futility question, there are — there are reasons to think that this term low FODMAP, you know, might be allowed under the regulations or might be disallowed for a reason other than that, that plaintiffs have — It seems more likely that it would be disallowed for the reason that they're trying to say it would be disallowed, right? I mean, is there any reason to think it wouldn't be? Yes, and I'll give you a couple. I mean, again, I'm not saying that it's not. I am simply saying that a decision has not been made. First, it doesn't expressly say on the sort of face of the regulation that this is a nutrient content claim of the type that would not be allowed. I will point you to the gluten example. This is in our brief, but — But they say they have this allergy statute, and that's really why that one's different. No. The gluten statute — it is true that the gluten-free term comes from a directive of Congress that says please define the label term gluten-free and put it on — allow people to put it on the thing. But that's all the statute says. What the regulation says, and I think this is what we're relying on, is we are not defining the terms low-gluten or very low-gluten, and we will consider those on a case-by-case basis to determine whether they are truthful and not misleading. That approach would be inconsistent with the way plaintiffs have understood the undefined nutrient content claim. If they're right, that all you need is something that would fall within — you know, it's a nutrient, and therefore, you know, you would also like to address the lactose claim, although that goes to the FDA. And as products under FDA's jurisdiction rather than USDA's jurisdiction, they have pointed to a single warning letter in the 30-plus years that these regulations have been in effect flagging the term low-lactose as potentially an undefined nutrient content claim. That warning letter, as far as I understand, did not lead to an enforcement action by the agency. They have no other evidence that either FDA or USDA has considered the term low-FODMAP specifically, either denied any other label applications or issued any other, you know, warning letters or taken any enforcement actions that would suggest that this particular term is prohibited under the regulation. Roberts. Is the agency disavowing that it would enforce against low-FODMAP? I'm not saying that. I'm saying it hasn't made a decision that the district court correctly concluded this. But there has been no official disavow. No, Your Honor. The district court concluded that this suit was effectively premature, and all I'm saying is that the agency has not taken a position one way or the other. And — And just to be clear, you're not in a position today before us to disavow any intent to enforce as to this claim by the FDA, correct? You know, this court acknowledged in Peace Ranch that, you know, an agency's refusal to disavow something is not itself sufficient to give rise to standing absent a otherwise credible threat of enforcement. And I think — and that speaks to some of the questions — Well, as alleged here, we do have the agency denying preapproval and then saying in consultation, the U.S.C. saying in consultation with the FDA, we're not going to approve, which would at least add some heft to the idea that this is not going to be approved and would be subject to an enforcement action when coupled with the absence of a disavow. That speaks to the USDA claim only, and we haven't challenged — There's an allegation that the USDA consulted with the FDA. I think it would be somewhat extraordinary for this court to conclude that in a single sentence in a letter from a different agency that says, without reference to any officials of the agency or any decision-making, that, you know, that that would give rise to a credible — Isn't true? No, I'm not saying it isn't true, Your Honor. I'm just saying it's — it doesn't give rise to a substantial threat of enforcement, which is what this Court has recognized and the Supreme Court has recognized is necessary in order to bring a pre-enforcement challenge. So the thing about that, though, is, I mean, we have Dry House, which in the First Amendment is arguably prescribed, and you're self-censoring. You have standing. I mean, I'm not sure if the pre-enforcement challenges that aren't about speech and self-censoring help you, unless — are you pointing to one that is about self-censoring and First Amendment? So I — just to be very clear, we're not challenging standing with respect to the USDA claims. We are only challenging the exhaustion — the failure to exhaust and the statutory requirement that you exhaust USDA claims. We are challenging, and the district court resolved it in this way, the standing  But as to the individual, Ms. Przbocki, you are challenging her standing, I think. With respect to the — The USDA. Right. So — sorry. With respect to the USDA — but the — the willing speaker standard is different, and this is this Court's case in Johnson, in which the Court said specifically that to allege an actual injury, you must have a willing speaker to give that information. And I think I understood my friend on the other side to agree that she does not have an injury with respect to the beef broth because she has the information. And so — But if we — if we think we agree with the Fifth Circuit that it's just logical that with this many people with low FODMAP dietary issues, there would be a market if you would allow it, then I think there are willing — we could get past this there are self-censoring willing speakers all over the place who want to have this label. So, Your Honor, I guess I would point you to the specifics of the complaint here. And what the complaint says, and this is the total of the allegations made by the plaintiff, is many food businesses would make more low FODMAP foods if they were allowed to tell customers on their food labels that they were indeed low FODMAP. And that is effectively an argument that the market would behave differently if the market were regulated differently. They haven't pointed to any other, you know, markets in other countries that would, you know, demonstrate evidence that, in fact, there are willing speakers out there that are — I thought they actually had. Don't they say Australia has this? They say in their brief that there are markets in other countries. But in the complaint, which is what — you know, this comes to this Court on a standing, you must take the complaint as it — as it comes to the Court. And, again, as I mentioned at the outset, they were offered the opportunity to amend their complaint and declined to do so. They say there is a university that certifies products as low FODMAP. They have made no allegations about products in other markets, about consumers in other markets, about anything that would suggest that if the regulation were different, that the market would behave differently, other than to say, of course the market would behave differently if it were regulated differently. I mean, so it would be a stronger allegation if they pointed to Australia. But I'm still struggling with why the allegation they make — I mean, if it was like there were three people with this thing and it's a rare condition, that would be one thing. But they're alleging that there's a lot of customers who care about this. And to me, that actually does suggest that if it was regulated differently, there would be a different market. Your Honor, this Court has understood in the — in the standing context that an actual injury is necessary to demonstrate a willing — a willing — that — a listener standing, excuse me, and that there must be identified a willing speaker at the — at the standing inquiry stage. It is not a question just for trial, as the Fifth Circuit has understood. Well, sorry. Where did they say that when evaluating a claim on its face, there's a sort of specialized — you know, we go beyond the — do you agree that we generally apply the plausibility standard to evaluate the allegations that support standing if you're raising a facial challenge to the allegations of standing? Yes, but I think — I think you're — you're also looking for specific facts. This is a Rule 8 question. You must plead specific facts that would support your conclusion that there is an actual injury and that — that injury in this context is that there are willing speakers who are being chilled by the regulation. I also would note that, as I said, there have been, as far as we know, no other submissions to USDA for products that would include the label low FODMAPs that have been rejected. The FDA has never flagged the use of the term as problematic, and neither — as far as — neither has USDA. Well, presumably, it's not being used on USDA-governed products because they would have had to — is there any evidence of the USDA's approval of that on a — No, there — as far as I know, no evidence of any request to use the term that would be subject to USDA's consideration. Sorry, just to make sure I didn't miss something, were you saying that we have a willingness speaker? Somebody says that the complaint has to identify the specific willing speaker? I am saying that both Johnson and — and in Tingley, which is a — and in Kirchmeier, which is a more recent version of the willing — more recent iteration of the willing speaker, that the Court has said there must be a speaker who is willing to convey the information. It has not said, you know, that we assume that there would be speakers. It says to establish actual injury, you must identify a willing speaker. And — and — Does it say — does it say there must be a willing speaker? Does it say you must identify — This is on — sorry, I'm just finding the pin site for you — 195. To establish actual injury from a restriction of the right to receive information, there must be a speaker who is willing to convey the information. And they've alleged that, correct? I mean, they've alleged that — they haven't said this is the speaker. They've alleged, though, that there are multiple speakers who are willing to provide the information, and we're here on a facial challenge to the sufficiency of their allegations of standing. Look, Your Honor, this is a standing question, and — and it is — so it is — and it is at the motion to dismiss stage. But the basics of Rule 8 require that you must plead facts that give rise to your claim, and the most they have is a suggestion in their complaint — and this is at would change their behavior if the market were regulated differently, and without any evidence that other markets operate differently, without any suggestion that — Well, sorry, maybe you can just help with the intuition then, because I — if — if you have a thing where they're saying there are millions of people with this dietary issue, why isn't it an inference that someone would start labeling to respond to that? Are you — is your argument, like, actually FODMAPs aren't a thing, or — like, why wouldn't it? Explain why the inference isn't reasonable. Well, I — Your Honor, I think it also, you know, goes back to what we were discussing earlier, which is that there hasn't been a determination by the agency that it is, in fact, prohibited. There hasn't — you know, the products in this case — They required preapproval and denied it. No, but I — the products in this case that — that the company is selling have been on the market for a number of years. They haven't identified any warning that they have — the letter that they have received from the agency. They haven't identified any other products that have been subject to the same warning letter. And so I don't think it is fair to draw the inference that, of course, if — if this were different, that the market would behave differently, partly because that is insufficient in terms of the factual development, but also because I think, as where we started, there hasn't been a determination that this is prohibited by the regulation. And, in fact, plaintiff — the company had been selling their products on the market for a number of years. And so I don't think you can sort of simply assume that it is the regulation that is standing in the way of a dramatic change in the market's behavior. And certainly they haven't alleged any facts that would allow you to further — a court to further develop that conclusion. But isn't Gormand itself alleging that it would develop more products, but has been chilled from doing so because it can't label them FODMAP? It has said that. I mean, it's somewhat in tension with the decision not to change the label on any of the products it's continuing to sell. And, you know, I don't think rises to the level of a concrete plan to violate the statute that this court has required in other standing cases. Oh, censorship. Even in those cases, the court has required a concrete plan to violate the statute that you've chosen not to engage in and has, you know, also required this similar substantial risk of enforcement. And I'm happy to address why we don't think that that's been demonstrated here. But I see I'm over time, and I know we've discussed that. I guess could I ask whether it's your position that the exhaustion include — I mean, okay, I guess you're saying we don't even know if it's — but let's just assume for a second that we do think that this regulation prohibits low FODMAP labels. Would it still need to be exhausted because you think exhaustion includes trying to ask for a different regulation or change of regulation? Or what is the limit of what the exhaustion obligation is? No. I think if that were the case, you know, if you assumed that, that you would still need to exhaust because it is, as we've discussed, not collateral and that it isn't — and I believe it's, you know, understood to be futility. But the actual term is that regulation — resolution would not serve the purposes of exhaustion, and I think under those circumstances, resolution of the claim by the agency would still serve the purposes of exhaustion because it would allow the agency to develop further, you know, explanation of why this particular term should be considered an undefined nutrient content claim. I understand that these kinds of claims are often subject to intermediate scrutiny, so it may speak to the agency's, you know, reasons for the regulation, you know, and what purposes it's serving. You're saying in the administrative exhaustion process, the agency would be able to explain essentially its First Amendment defense of the regulation? Because I thought the question was a little different about whether in the administrative exhaustion process contemplated by the agency is someone who seeks preapproval is denied under regulation. Are they supposed to say as part of that administrative exhaustion process, we want you to change the rule because it's unconstitutional? Is that something that can actually be exhausted through the process you're saying should have been used here? Maybe I misunderstood the question, and I apologize. I'm not saying that they are required to go through the process that would require them to petition the agency to add low FODMAP as a defined nutrient content claim. You're not saying they have to engage in a petition for rulemaking? No. I am saying they have not exhausted their administrative appeals. The statute requires them to do so, and this Court's standard for when exhaustion should be excused has not been met. And could they pursue that at this time? I don't see why not. I mean, they presumably need to submit a new label approval, you know, a new label for approval, but I don't see why they wouldn't be able to receive a determination from the agency and appeal. There's no bar that would say stop them? As far as I know, there's not. I actually want to ask, so I understand you're not taking the position that they would have to engage in a petition for rulemaking. In the administrative exhaustion process, would they have to say, you know, or would they actually have to say if the reason why you're denying the approval is because your rule is unconstitutional? I mean, like, do they have to raise what they would raise in the rulemaking process in the essentially more adjudicatory preapproval process? I'm not sure, Your Honor. I mean, I don't think that question is presented by this case, but I think it gets to you. Are they bringing a facial challenge to the rule? So I guess I'm saying to the extent that, I mean, is a facial challenge to the rule even something that the agency would entertain in the administrative exhaustion? Right, so I guess what I would say is that administrative exhaustion here is relevant and should not be excused because there is a reasonable possibility that at the conclusion of the process their claim will not be denied or would be denied on a different basis that would inform their constitutional claim and that it was correct for the district court to not excuse the undisputed requirement that Congress put in place that you exhaust administrative appeals before you bring a claim because the administrative appeals process would inform the court's resolution of the constitutional question. Can I ask about this? So you're saying something that I also think the district court said, which is sort of the exhaustion steps could help us with further litigation by informing what is going to happen in further litigation. I had understood before that futility for exhaustion was more about is there any chance you can actually get relief from the agency, not that it helps further litigation in court. Do you have a case that says when we think about exhaustion we should think about whether it would help litigation in court later? Well, I guess I would say I think there are lots of cases that say that even if the agency cannot resolve your constitutional question, you still have to present it to the agency before you come to court. That is not a – I mean, and because it will inform the later litigation or something.  I think that's basically thunder basin in all the cases that follow in that vein. But I think the argument that I'm making is more narrow, which is this Court said in Murillo v. Matthews that if exhaustion would mean that the court doesn't need to decide the constitutional question because the administrative appeals process might be resolved in such a way that the constitutional question is addressed, that that undermines an argument that exhaustion should be excused. And that's what we're saying, that there is reason to think that the administrative appeal process here would allow for a different resolution of the claim that plaintiffs are making and would change the contours of the constitutional question that the court is being asked to decide. And that's why exhaustion should not be excused. Okay. Thank you very much for the arguments. I can't remember. Let's put four minutes on the clock, please, to be fair. Thank you, Your Honors. And unless the Court has more questions about the Lister claim, which I think the Court understands, I'll just focus on four quick points about the speaker claims. First, to answer Judge Song's question, the regulation I mentioned earlier that directs that they have to follow the agency's interpretation of the regulations does not have an exception for constitutional claims. So there's really no way they could do that, Your Honor, based on the express language of the regulation. Second, Your Honor, my client talked about how there's that one low lactose letter, but there are hundreds and possibly thousands of letters that directly contradict my friend's argument. And remember, their argument is that even though these certain categories of nutrients are clearly nutrient content claims when you use low or high, that a subset isn't necessarily a nutrient content claim. And FDA has literally sent out hundreds of letters in that precise scenario for hundreds of different subset nutrients. And so unless all of those are wrong, Your Honor, then my friend is also wrong. Additionally, Your Honors, I'd just like to point out, going back to my point about the express language used by USDA in its own guidance, I quote, and this is on page 73 of the USDA labeling guide that we mentioned in the briefing, a food label may not bear an express or implied claim that characterizes the level of a nutrient in a food, then in parentheses it says nutrient content claim, unless the term has been defined by regulations. I think when you take that express plain language and you add the regulation that says they have to follow it, I don't see how it's not futile, Your Honor. And then, Your Honor, I'd also like to point out one last thing, which, and I know the court might not be sympathetic to the collateral argument, but what I would like to quickly point out is that in McBride, in the collateral section, it cites to Johnson v. Shalala, which in turn talks about Bowen v. City of New York, a Supreme Court case. And both this court in Johnson v. Shalala and the Supreme Court in Bowen v. City of New York dealt with situations that I think directly defeats my friend's collateral argument. Both of those had to do with claims, one social security, one disability. Both dealt with situations where if the plaintiff won the case, they would get that claim. And in both situations, this court and the Supreme Court said that doesn't mean it's not collateral. What matters is that they were charging, they were challenging something that the agency was doing. And if that ends up leading to the relief, that doesn't make it collateral. It's only collateral if, for example, we were here saying we would like Your Honors to instruct the USDA to grant us, you know, label preapproval, but that's not what we're doing. We're saying they just can't say that honest language is banned when it's not on this preapproved list. And so we think under Johnson v. Shalala and Bowen v. City of New York that we have met the collateral prong of Nebraska. And how do you respond to this Thunder Basin idea? I don't think it defeats it, Your Honor. I think both the Supreme Court's precedent in Bowen and this Court's precedent in Johnson v. Shalala are directly on point. And so I would just direct the Court to those cases. Thank you. Thank you. Thank you very much, both sides, for the arguments. This case is submitted. And we are adjourned for now. We're going to conference. I think some of our law clerks may talk to the students, and then we'll come back out. Thank you, everyone. I'll rise.
judges: FRIEDLAND, SUNG, Pitts